[Crim. No. 3909.    First Dist., Div. One.    July 19, 1961.]

THE PEOPLE, Respondent, v. CECIL MILLER, Appellant.

Edward T. Mancuso, Public Defender, and Waldo F. Postel, Deputy Public Defender, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Derald E. Granberg, Deputy Attorney General, for Respondent.

BRAY, P. J.—Defendant appeals from a judgment of conviction, after jury verdict, of violation of section 11500, Health and Safety Code (possession of heroin), and from the order denying new trial.

### QUESTIONS PRESENTED

1. Validity of arrest and search. Did the similarity of names justify the action of the police officers?

2. Was the search unreasonable?

### EVIDENCE

Police Officer Weiss, within a period of one and a half to two weeks, had seen the name ''Cecil Miller'' on the register of three separate hotels in San Francisco, the last one being the Manor Plaza. From the Bureau of Identification he received information that a ''Cecil Miller'' had a record concerning robbery, narcotics and burglary. The Bureau of Warrants reported that there were three outstanding traffic warrants for a ''Cecil Miller'' who lived on Franklin Street. Officer Weiss and a fellow officer had gone to the Manor Plaza, but did not find Cecil Miller, defendant, in. On this particular Sunday morning they, with another officer, were making ''routine rounds'' and learned from the clerk that defendant was in his room. Although they did not have any warrant with them, having been informed of the existence of the three warrants, they went to defendant's room, knocked twice on the door and identified themselves as police officers. Although they could hear water running and movement inside the room, there was no response to the knocking. Officer Marshall then obtained a pass key from the desk clerk, unlocked the door and the three officers entered the room. Defendant was sitting on a stool washing clothes in the bathtub. He said

he was Cecil Miller, but, on being informed of the three traffic warrants, denied that they were for him, stating that he did not drive a car nor have a driver's license, and had never lived on Franklin Street.

The officers then asked defendant if he would come down to the station for a further check on the warrants. He started to dress. While waiting for him to dress they noticed on the top of the dresser a safety pin and an eye dropper. They then asked defendant to let them see his arm. He had a "track" that was about 6 inches long on it. (A "track" is a scarring, collapsing or darkening of a vein common to narcotic users.) They also observed two small bumps and a small pin hole on the track. They then performed the standard field flashlight test. When defendant's eyes failed to contract they concluded that he was presently under the influence of a narcotic. They then arrested him for the addiction (Health & Saf. Code, § 11721). Searching the room they found empty balloons, and balloons containing a small quantity of a whitish powder, later identified as heroin. Two days later at the Nalline Clinic an examination of defendant disclosed that he had recently used narcotics.

At the trial defendant testified that he had not answered the knocking on his door by the officers, because he had not heard them. He claimed that the eye dropper was not on top of the dresser but in a drawer of it. He also denied that any heroin was found in his room while he was there.

Although defendant had prior convictions for possession of narcotics, second degree robbery with prior felony conviction, and petty theft with a prior felony conviction, he was not the Cecil Miller who had committed the traffic violations.

1. *The Arrest and Search.*

The validity of the arrest and search depends primarily upon whether the officers were justified in entering defendant's room. If they were, what they observed in the room justified their actions thereafter.

Section 842, Penal Code, provides: "An arrest by a peace officer acting under a warrant is lawful even though the officer does not have the warrant in his possession at the time of the arrest, but if the person arrested so requests it, the warrant shall be shown to him as soon as practicable."

Sections 814 and 815 require no designation in the warrant of the person other than his name. Section 1963, subdivision 25, Code of Civil Procedure, provides a rebuttable presumption of identity of person from identity of name. The basic question

here is whether the officers acted reasonably in entering the room to arrest a man who had the same name as that on the warrants which the officers knew to be outstanding. The answer is that it was reasonable to so act. It would be difficult to ascertain the description of a traffic violator. What more reasonable way is there than to ask the man who because of the identity of name is presumably the man wanted? Even if the officers had a description of the man wanted they would still have to compare it with the man.

Section 844, Penal Code, provides: ". . . in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

The officers, having reason because of the identity of names to believe that defendant was the person named in the warrants, and having knocked on the door several times announcing that they were police officers, substantially complied with this section. While they did not announce the purpose for which they desired admittance, such announcement would have been futile in view of the fact that they received no response from the one in the room to the announcement of their identity.

Once in the room the officers did announce their purpose there, and when defendant claimed not to be the person to be arrested, the officers reasonably deferred making an arrest but requested him to accompany them to the station to determine the question of identity.

The fact that the officers did not have the warrants with them is of no importance. Section 842 permits a legal arrest to be made even though the arresting officer does not have the actual warrant in his possession at the time of the arrest. The section allows for a showing of the warrant as soon as practicable. As warrants do not contain a description of the person charged, the absence of the warrants in this case in nowise contributed to the officers' mistake in considering defendant to be the person mentioned therein.

Section 841, requiring that the person to be arrested receive certain information, did not apply as the arrest was not made. In *People v. Carswell* (1959), 51 Cal.2d 602 [335 P.2d 99], the officers seeking to arrest the defendant knocked on the door of defendant's room, announced that they were police officers, and receiving no reply, obtained a key and entered the

room. The defendant was not in the room but the officers observed incriminating evidence. It was held that this was a lawful entry, and the evidence seized was admissible. The court said (p. 607) : ''The entry was justified by section 844 of the Penal Code, which provides that to make an arrest a peace officer, after demanding admittance and explaining the purpose for which admittance is desired, may break open the door of a house in which he has reasonable grounds to believe the person arrested to be. The officers testified that they called at defendant's home about 6 o'clock in the evening, when they thought he was likely to be home from work. That evidence is sufficient to support a finding that they had reasonable grounds to believe him to be present. Its weight is not diminished because the officers received no response to their knocking. They testified that persons seeking to avoid arrest commonly fail to reply.''

Section 43.5(a), Civil Code, protects a peace officer making an arrest if the officer ''acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant.'' The actions of the officers in this case meet these tests. *Walton* v. *Will* (1944), 66 Cal.App.2d 509 [152 P.2d 639], where the officer was held liable for arresting the wrong man, is not applicable here, as the circumstances there were so completely different from those in this case; among other matters, there the officers refused to give the defendant the opportunity of showing them that he was not the person named in the warrant. Here the officers offered defendant the opportunity of going to the station to determine the question of identity, which opportunity defendant accepted.

In our case there were grounds for the officers to think reasonably that defendant was in fact the person named in the warrants. They were told by the clerk that defendant was at home. To their knock they received no response, but they did hear movement inside the room. A reasonable inference was that defendant was attempting to avoid arrest. As in the Carswell case, section 844 justified the entry.

### 2. *Search Reasonable.*

As said in Carswell, *supra,* pp. 607, 608, the entry by the officers into the defendant's room being lawful, ''They were not required to blind themselves to what was in plain sight, and their lawfully obtained knowledge could be used ...'' They saw on the dresser an eye dropper and a safety pin, ''paraphernalia used by people trafficking in narcotics.'' Coupled with the knowledge that the officers had that defendant

had suffered a prior conviction for narcotics, there were sufficient grounds to provide reasonable cause for them to believe that a public offense was being committed in their presence (Pen. Code, § 836, subd. 1). They then made the flashlight test and a search and found heroin.

In *People* v. *Mills* (1957), 148 Cal.App.2d 392, 399 [306 P.2d 1005], the rule is laid down that when an arrest is made for one purpose the arrest and search connected thereto cannot be used as a pretext to secure evidence of other crimes committed by the person arrested, but that the officers need not blind themselves to what is in plain sight, simply because it is disconnected with the purpose for which they entered. Here there was a different situation from the situations in the Mills case and in *People* v. *Schaumloffel* (1959), 53 Cal.2d 96 [346 P.2d 393]. These cases exemplify the first part of the above rule where the officers used the arrest as a pretext to search for evidence of crimes other than the ones for which the arrest is made.

The situation here is somewhat similar to that in *People* v. *Roberts*, 47 Cal.2d 374 [303 P.2d 721], where the officers entered the defendant's room in response to what they believed to be cries of physical distress. They were at the time in pursuit of some stolen articles, such as radios. When they entered the room there stood in plain sight a new radio which answered the description of one which had been stolen. They took its number, and, after checking, found it to have been stolen. They then obtained a search warrant and seized the radio. The court held that in entering the room the officers were limited to making only that kind of search reasonably necessary to determine whether a person was actually in distress somewhere in the apartment. However, they were entitled to act on anything that appeared in plain sight. The court said (pp. 379-380): "In formulating the rules governing lawful searches and seizures the United States Supreme Court has repeatedly recognized the distinction between the seizure of evidence which was readily visible and accessible to the officers and that which was uncovered only after a general, unreasonable ransacking of the premises." (See also *People* v. *Littlejohn* (1957), 148 Cal.App.2d 786, 792 [307 P.2d 425].)

In *People* v. *Holland* (1957), 148 Cal.App.2d 933 [307 P.2d 703], it was held that when the police after being admitted to the defendant's room, observed the defendant to "be in a nodding or slightly sleepy condition" (p. 935), and there was no reaction when his eyes were checked with a flashlight, the

officers were justified in assuming that the defendant was under the influence of a narcotic and arresting him and in searching for narcotics.

Judgment and order affirmed.

Tobriner, J., and Duniway, J., concurred.