PETERS, J.
On October 20, 1966, after trial without a jury, defendant was convicted of the crimes of robbery (Pen. Code, § 211) and kidnaping for the purpose of robbery (Pen. Code, § 209). He has appealed from the resulting judgment.
Pour men robbed a residence in Studio City on June 4, 1966. The following day, Alfred Baum and Richard Bader were arrested for possession of narcotics. At the time of their arrest, they were driving in defendant’s car, which contained stolen property from the Studio City robbery. Both men made full statements admitting the commission of the robbery, and both implicated defendant.[1] Bader stated that he was sharing an apartment with defendant at 9311 Sepulveda Boulevard, and that the guns used and the property taken were there.
On June 6, Officer Gastaldo interviewed Baum and Bader, and they repeated their inculpations of Hill.[2] Prom records of the Los Angeles Police Department Gastaldo verified Hill’s association with Bader, his age and physical description, his *552 residence, and the make of his automobile. This information corresponded with and corroborated the descriptions provided by the robbery victims and data supplied by Baum and Bader. Gastaldo and three other officers proceeded to Hill’s apartment, and after confirming the correctness of the address, knocked on the door. Gastaldo testified: “The door was opened and a person who fit the description exactly of Archie Hill, as I had received it from both the cards and from Baum and Bader, answered the door. ... We placed him under arrest for robbery. ’ ’
The arrested man said that his name was Miller, that he did not live in the apartment, and that he was just “sitting around” waiting for Hill. He stated that he did not know of any stolen property in the apartment, and that he had seen no guns, although an automatic pistol and a clip of ammunition were in plain view. The man produced identification, but Miller’s credentials did not “prove anything” to Gastaldo. Miller was subsequently booked, held for a day and a half, and released.
The officers searched the premises and found weapons, stolen property, and two pages of a diary in defendant’s handwriting. The diary told a damning story of the robbery of June 4.[3] At trial, eyewitnesses to the robbery were unable to identify Hill. The only substantial evidence of his guilt consisted of materials found in the search. The question presented is whether the police obtained such evidence by means of an unreasonable search and seizure.
It is axiomatic that a search incident to a valid arrest may “extend beyond the person of the one arrested to include the premises under his immediate control. ’ ’ (Harris v. United States, 331 U.S. 145, 151 [91 L.Ed. 1399, 1406, 67 S.Ct. 1098]; People v. Cruz, 61 Cal.2d 861, 865-866 [40 Cal. Rptr. 841, 395 P.2d 889]; People v. Burke, 61 Cal.2d 575, 579-580 [39 Cal.Rptr. 531, 394 P.2d 67]; 44 Cal.Jur.2d, Searches and Seizures, §42, pp. 110-113.) The police did not have *553 probable cause to arrest a man named Miller, and Miller was not in fact in immediate control of Hill’s apartment. The arrest and search must be validated, if at all, on the theory that the mistaken beliefs of the police rendered their activity “ reasonable ” in a constitutional sense.
The Arrest
The threshold question whether the police had probable cause to arrest Hill need not be labored,- they clearly did. Hill’s participation in the robbery was attested by his cohorts, and although they were not informants of proven reliability, their admissions were entitled to great weight and were corroborated in material particulars. (People v. Sandoval, 65 Cal.2d 303, 307-311 [54 Cal.Rptr. 123, 419 P.2d 187]; People v Ingle, 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577].) Furthermore, the evidence shows that Gastaldo honestly and reasonably believed that the man he placed under arrest was Hill. Authority is sparse, but it appears that the arrest of Miller, whom the police reasonably believed to be Hill, was valid.
Thus, in People v. Campos, 184 Cal.App.2d 489 [7 Cal. Rptr. 513], the police were searching for a Willie Campos who resided on Paramount Boulevard and was sought on federal charges. They had a picture of defendant, a different Willie Campos, who also resided on Paramount Boulevard. When collared by the police, defendant consented to a search which disclosed narcotics. Both arrest and search were valid. Similarly, in People v. Miller, 193 Cal.App.2d 838 [14 Cal.Rptr. 704], the police sought a Cecil Miller who was wanted on three traffic warrants. They found defendant, a different Cecil Miller, and a search incident to his arrest disclosed narcotics. The arrest and search were lawful.
Miller was not prosecuted, but the lesser included principle is plain: When the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest. (See People v. Kitchens, 46 Cal.2d 260, 263 [294 P.2d 17] (arrest was unlawful “unless the officers were justified in arresting Germane and reasonably mistook defendant for him.”); People v. Yet Ning Yee, 145 Cal.App.2d 513, 517-518 [302 P.2d 616]; cf. People v. Villareal, 262 Cal.App.2d 438, 444 [68 Cal.Rptr. 610],- People v. Soto, 144 Cal.App.2d 294, 300 [301 P.2d 45]; 5 Cal.Jur.2d, Arrest, § 36, pp. 239-240.)[4]
*554 The Search
Unlike most mistaken arrest eases, however, this is not one in which the arrestee’s own “papers, and effects” were at stake when the police initiated their search. There remains the question whether Hill’s absence and Miller’s lack of control of the premises combined to render a valid arrest insufficient warrant for the ensuing search; whether, in brief, the special concern for privacy implicit in the Fourlh Amendment should override the ostensible reasonableness of the police action. In a chain of cases presenting analogous questions concerning vicarious waivers of constitutional rights, the answer has been no.
In People v. Gorg, 45 Cal.2d 776, 783 [291 P.2d 469], the defendant rented a room in a private residence. In defendant's absence, the homeowner allowed the police to search the room where they found narcotics. The court held that where “officers have acted in good faith with the consent and at the request of a home owner in conducting a search, evidence so obtained cannot be excluded merely because the officers may have made a reasonable mistake as to the extent of the owner’s authority.” Although sometimes criticized,[5] the rule that a search is not unreasonable if made with the consent of a third party whom the police reasonably and in good faith believe has authority to consent to their search has been regularly reaffirmed. (See, e.g., People v. Smith, supra, 63 Cal.2d *555 779, 799; People v. Caritativo, 46 Cal.2d 68, 72-73 [292 P.2d 513]; People v. Corrao, 201 Cal.App.2d 848, 852 [20 Cal.Rptr. 492]; People v. Yancy, 196 Cal.App.2d 665, 667 [16 Cal.Rptr. 766]; People v. Williams, 189 Cal.App.2d 29, 38 [11 Cal.Rptr. 43]; People v. Ransome, 180 Cal.App.2d 140, 145-146 [4 Cal. Rptr. 347]; Witkin, Cal. Evidence (2d ed. 1966) §§ 82-88, pp. 78-82.)
These cases contain the two unusual elements found here: An absent defendant and license to search provided by a person without actual authority to do so. They recognize that any search or arrest constitutes a substantial invasion of privacy. They conclude that such invasions are not more obnoxious when predicated upon a mistake. It therefore appears that neither Hill’s absence nor Miller’s lack of control vitiate the search where the police validly arrested Miller in the reasonable and good faith belief that he was Hill and that he controlled the premises.
In summary, we hold that the reasonable but mistaken beliefs of the police did not render their conduct unreasonable in a constitutional sense. Mistake of identity does not negate probable cause to arrest, and a search based on a valid but mistaken arrest is not unreasonable as an unwarranted invasion of either the arrestee’s or the defendant’s privacy. The evidence of Archie Hill’s participation in the Studio City robbery which was the fruit of the search of his apartment was properly admitted. The judgment of conviction is affirmed.
Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.
Appellant’s petition for a rehearing was denied December 11,1968.

Baum and Bader were properly warned of then- Dorado [62 Cal.2d 338 (42 Cal.Rptr. 169, 398 P.2d 361)] rights, but they were not also informed that counsel would be appointed if they were indigent. Their confessions were therefore inadmissible as to their guilt. (Miranda v. Arizona, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] ; see C.T. 47-58.) Because the confessions did not violate defendant’s rights, however, they were admissible on the issue of probable cause for his arrest. (People v. Varnum, 66 Cal.2d 808, 813 [59 Cal.Rptr. 108, 427 P.2d 772].)

Bader told Gastaldo that he could go to the apartment to search. Even if failure to properly advise Bader of his Miranda rights did not vitiate the consent (see People v. Smith, 63 Cal.2d 779, 798-799 [48 Cal.Rptr. 382, 409 P.2d 222]), the subsequent search could not be justified on the basis of the consent because the facts surrounding it—whether it was not a mere submission to authority, not bound up with unlawful conduct— were never developed (see People v. Henry, 65 Cal.2d 842, 846 [56 Cal. Rptr. 485, 423 P.2d 557]), and Bader’s consent does not preclude a challenge to the admissibility of the evidence found in the apartment (see Within, Cal. Evidence, § 76, pp. 72-73).

The diary narrated: “Friday I went out with Gina. Then Saturday night we went out to hold up a market, but when we got there it was closed, so we had to go to a house. We knocked on the door, and when they answered the door we ran in and I had to hit the man on the head with my gun, because he didn’t get down on the floor fast enough. We only got about $60 from them. We left from there and went to TJ and scored seven keys. On the way back we pulled over at the roadblock, but they only checked the trunk of the car. We got back home about 6:00 in the morning. I went to bed. Then Dick and one of the guys that made this run with us left my apartment with Dick to go and get something to eat. This turned out to be a mistake, because they got busted for possession of grass,”

The principle that mistaken identity does not vitiate an arrest may fairly be found in Penal Code section 836, subdivision 3, which also *554 provides that mistake as to the commission of a felony does not vitiate ail arrest. The statute allows an officer to arrest without a warrant whenever “he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed. ’ ’
A search incident to an arrest on mistaken identity is valid (People v. Miller, supra, 193 Cal.App.2d 838; People v. Campos, supra, 184 Cal.App.2d 489), as is a search incident to an arrest for a felony which has not in fact been committed (cf. Witkin, Cal. Evidence (2d ed. 1966) § 113, pp. 112-113).

See, e.g., Note (1966) 33 U.Chi.L.Rev. 797, 801-804; Note (1965) 12 U.C.L.A.L.Rev. 614.
The critics rely on Stoner v. California, 376 U.S. 483, 488 [11 L.Ed.2d 856, 860, 84 S.Ct. 889], where the court said: “Nor is there any substance to the claim that the search was reasonable because the police, relying upon the night clerk’s expressions of consent, had a reasonable basis for the belief that the clerk had authority to consent to the search [of defendant’s hotel room]. Our decisions make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of ‘apparent authority. ’ ” (See Chapman v. United States, 365 U.S. 610 [5 L.Ed.2d 828, 81 S.Ct. 776] (landlord).) California cases are to the same effect. (See People v. Roberts, 47 Cal.2d 374, 377 [303 P.2d 721] (apartment manager) ; People v. Burke, 208 Cal.App.2d 149, 160 [24 Cal.Rptr. 912] (hotel manager).)
*555 And it is often ignored that the court also said: “ [T]here is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner’s room.” (376 U.S. at p. 489 [11 L.Ed.2d at p. 860].) The sine qua non of the operation of the rule of Gorg is an honest belief based on reasonable grounds.
Neither is Beck v. Ohio, 379 U.S. 89, 97 [13 L.Ed.2d 142, 148, 85 S.Ct. 223], germane. The court remarked there that “If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be ‘ secure in their persons, houses, papers, and effects,’ only in the discretion of the police.” In Bede, the police acted without probable cause and only debateably in good faith in arresting and searching the petitioner. No one disputes that good faith is not a substitute for probable cause.