Irvin GILCHRIST, a/k/a Irvin Gilcrist, Appellant,

v.

UNITED STATES, Appellee.

No. 6590.

District of Columbia Court of Appeals.

Argued Nov. 13, 1972.

Decided Feb. 6, 1973.

Richard T. Conway, Washington, D. C., appointed by this court, with whom Philip J. Harter, Washington, D. C., was on the brief, for appellant.

Lee Cross, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Ann S. DuRoss and John S. Ransom, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, KERN and NEBEKER, Associate Judges.

FICKLING, Associate Judge:

Appellant was convicted after a nonjury trial of one count of carrying a pistol without a license, D.C.Code 1967, § 22–3204.

Appellant contends that the trial judge erred in failing to suppress the pistol which was seized from the waistband of his trousers. We agree and reverse.

On October 22, 1971, Officers Lee and Harvey of the Metropolitan Police Department were on routine patrol in plain clothes and in Officer Lee's private vehicle. They were parked on S Street, N.W., near the intersection of 19th Street. The officers, who were very familiar with the neighborhood, had stopped to observe an individual who was "new" to the area and who was acting in a "strange" manner. As they watched, appellant, driving a 1970 Ford with "RA" tags,[1] pulled to the curb and parked. Appellant got out of the vehicle, went over to the individual whom the officers had under surveillance, and began walking down the street with him. Officer Lee recognized appellant as Irvin Gilchrist,

a friend with whom he had gone to high school. He also remembered that about two weeks earlier, at a roll call, he had heard an announcement that there was a warrant for the arrest of an Irvin Gilchrist for unauthorized use of a motor vehicle (U.U.V.)[2] in connection with a rental car.

The officers decided to investigate the situation by confronting appellant.[3] They drove down S Street past appellant and his companion, stopping near the intersection of 18th and S Streets. As appellant approached, he recognized Officer Lee. The officers walked over, identified themselves as policemen, and questioned appellant concerning his authority to operate the rental vehicle. He explained that the car was rented in his wife's name, that it was not overdue, and that the rental papers were in the vehicle. Appellant suggested that if the officers would give him a ride back to the car, he would show them the rental contract. The officers agreed and appellant's companion got into Officer Lee's automobile. As appellant started to enter the car the officers stopped him and also asked his companion to get out. The officers then frisked both individuals. The frisk of appellant produced the gun, clip, and ammunition which were the subject matter of the suppression motion. Appellant was arrested and subsequently charged with carrying a pistol without a license, D.C.Code 1967, § 22–3204.

On April 28, 1972, a hearing was held on appellant's motion to suppress. During the hearing both officers testified for the Government; neither officer articulated any facts which aroused his suspicion that ap-

1. "RA" tags indicated that the car was a rental vehicle.

2. D.C.Code 1967, § 22–2204.

3. The officers did not explain their failure to contact police headquarters to confirm the existence or status of the putative warrant, even though they admittedly had a radio available and the opportunity existed for the call. The failure to utilize

this method of investigation takes on considerable significance in view of the fact that Officer Lee was not able to recall from the roll call the tag number, the description of the vehicle, the description of the suspect, or whether an address had been given for Irvin Gilchrist. Additionally, the officers' testimony concerning an attempted tag check with the Washington Area Law Enforcement System was hopelessly contradictory.

pellant might be armed or dangerous. Officer Harvey testified that once appellant explained his authority to have the car, he was free to go and that there was no need to return to the vehicle to check the rental contract. They testified that they frisked appellant solely because of a police regulation which required them to frisk anyone getting into a patrol car whom "we believe to have done a crime [*sic*]." [4]

On appeal the Government asserts alternative justifications for this frisk. It contends that the frisk was a search incident to a lawful arrest or, alternatively, that it was at least a lawful *Terry* [5] "stop and frisk". In view of the recent Supreme Court case of Whiteley v. Warden, 401 U. S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), we find little merit in the Government's first contention. In *Whiteley* the officer who arrested appellant relied on a statewide radio broadcast of a warrant which had been issued based on a faulty affidavit. Mr. Justice Harlan, speaking for the majority, held:

> We do not, of course, question that the . . . police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer *to rely on fellow officers to make the* arrest. [401 U.S. at 568, 91 S.Ct. at 1037]

Similarly, if the Government wishes to justify this frisk as a search incident to a lawful arrest, it must establish the existence of a validly issued arrest warrant. We find no constitutionally significant difference between an invalidly issued warrant and one which in fact does not exist. The record in the instant case reveals that the Government failed to produce either the warrant or any documentation of the roll call [6] at which the existence of the warrant was announced. Additionally, appellant was not charged with U.U.V., D.C. Code 1967, § 22–2204.

The Government next attempts to justify this search as a lawful *Terry* "stop and frisk." It argues that a frisk based on the putative regulation is reasonable because "an officer transporting a suspect should not be required to articulate such specific indicia of dangerousness to justify a frisk as are required when an officer has ready access to his pistol." [7] We agree that when an officer allows or requires a citizen to enter his patrol car for transportation, the officer is in a less advantageous position to defend himself than if both parties are on the street. We also agree that the disadvantageous position the officer is placed in is *an* indicia that the officer can point to in his articulation of factors which shaped his reasonable belief that a suspect was armed and dangerous. However, a regulation which required that a citizen be frisked based on that single indicia would raise serious constitutional questions.[8]

It is, of course, commendable police practice for the Department to codify standards of official conduct to be applied

4. Later, at trial, Officer Harvey amended his version of the supposed regulation to require a frisk of anyone getting into a patrol car whom "we don't know" or "believe to have done a crime [*sic*]." Officer Harvey also responded affirmatively to the Assistant United States Attorney's question: "Officer, if I were to get into your car, or anyone else, would you search me?"

5. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

6. The record indicates that written records are kept of roll calls.

7. Appellee's Brief at 9.

8. The regulation does not appear to exist. *See* note 10 *infra*.

uniformly in particular factual situations,[9] but the mere codification of such conduct does not insulate the actions of an officer from constitutional review. Even if the existence of the putative regulation had been established,[10] its constitutionality *as applied* to the facts of the instant case would be questionable. Here, the officers did not articulate any factors which would justify their reasonable belief that appellant was armed and dangerous, as the Supreme Court requires they must.[11] Indeed, Officer Harvey candidly testified that in his own mind appellant was free to go before the frisk took place. Clearly the frisk of appellant occurred *in spite* of the fact that the officers were not even suspicious that he was armed or dangerous. Since the officers' blind reliance on the putative regulation caused a violation of appellant's fourth amendment rights, we find that the trial judge erred in failing to suppress the gun, clip, and ammunition seized from appellant. The judgment of the trial court is therefore

Reversed.

9. Cf. United States v. Robinson, 471 F.2d 1082 (D.C.Cir., decided in banc October 31, 1972) (dissenting opinion) ; United States v. Mills, 472 F.2d 1231 (D.C.Cir., decided in banc May 10, 1972).

10. The only evidence offered at trial in an attempt to establish the putative regulation was the officers' testimony. We note

that the Government's brief on appeal does not set forth such a regulation and, also, that our own independent efforts have failed to establish its existence.

11. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 612 (1972) ; Terry v. Ohio, *supra* note 5.