**Robert B. SANDERS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 7930.**

District of Columbia Court of Appeals.

Argued June 19, 1974.

Decided June 12, 1975.

Richard T. Tomar, Washington, D. C.,
appointed by this court, for appellant.

Barry L. Leibowitz, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Jonathan B. Marks, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and KERN and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was found guilty of carrying a pistol without a license, D.C.Code 1973, § 22–3204, failure to register a firearm, D. C.Pol.Reg. Art. 51, § 1, and the unlawful possession of ammunition, id. Art. 53, § 2. He contends that the pistol and ammunition should have been suppressed as evidence. We disagree, and affirm.

I

On the afternoon in question, Officer Douglas Jenkins of the Metropolitan Police Department observed appellant walking along the sidewalk on 19th Street, N.W. The officer testified at a pretrial suppression hearing that the block was "near the hotels on Connecticut Avenue, and there are a lot of petit larcenies from autos in the area." Officer Jenkins watched appellant for a "couple of minutes", during all of which time appellant was walking slowly, "looking in the direction of the parked cars" from a distance of only two or three feet. Appellant then seemed to notice Officer Jenkins and his partner, and promptly walked away "sort of looking back at us."

Suspecting that appellant might be "a person breaking into a car", Officer Jenkins approached him and asked for identification. Appellant produced an identification card on which his last name was misspelled as Saunders (rather than Sanders). The officer "filled out a contact card . . . with information—location, name, date of birth and with a description." Of-

ficer Jenkins then "told him thank you very much and let him go on his way."

Officer Jenkins radioed appellant's name —as incorrectly spelled on appellant's own identification card—and birthdate to a dispatcher, who responded that there was an Arlington County, Virginia, arrest warrant for a person of that name. The dispatcher asked for a description of appellant, which Jenkins supplied. The dispatcher responded that the man described "sounded like" the subject of the warrant.

Officer Jenkins had kept appellant in sight, and approached him again. He asked appellant "if he had ever been locked up in Arlington County." When appellant acknowledged that he had been, the officer said "that I would have to take him to the station to check the warrant out." At that point, appellant "couldn't go anywhere and that was clear to him." Consistent with the normal procedures associated with taking a subject into custody pursuant to a warrant, Officer Jenkins and his partner patted down appellant. A pistol was retrieved from appellant's belt; a further search revealed forbidden ammunition. Immediately after appellant was arrested on the gun charge, the dispatcher radioed that Arlington County would not seek extradition on the warrant. Further inquiry led to a realization that the warrant actually was for the arrest of another man, not for appellant.[1]

The trial court took the motion to suppress under advisement. Two days later, a written order was issued denying the motion. In it, the court stated its conclusion that the defendant had been "looking into parked cars". Our dissenting colleague expresses the belief that such a conclusion was incorrect, since Officer Jenkins' specific testimony was that the defendant had been looking "in the direction of the parked cars." However, we are

1. The record further reflects that the birthdates of Saunders and appellant were the same (or nearly so), and that their residence addresses were but a few blocks apart.

bound by the inference drawn by the trial court from the totality of the testimony, since it is not "plainly wrong or without evidence to support it." D.C.Code 1973, § 17–305. We accept the trial court's evaluation of the evidence, and proceed to the legal question presented.

## II

Appellant, the government, and our dissenting colleague rely principally in support of their differing positions on Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968). However, we conclude that neither the first nor the second stop fell within the *Terry* category. In *Terry*, the Supreme Court noted (*id.* at 19 n.16, 88 S.Ct. at 1879):

> We . . . decide nothing today concerning the constitutional propriety of an investigative "seizure" upon less than probable cause for purposes of "detention" and/or interrogation. Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

■ Considering the suspicious nature of appellant's conduct, there was nothing impermissible in Officer Jenkins' approach to request identification. *See* Coleman v. United States, D.C.App., 337 A.2d 767 at 772 (1975); United States v. Lee, D.C. App., 271 A.2d 566, 567–68 (1970); State v. Tsukiyama, 525 P.2d 1099 (Hawaii 1974). However, we need not resolve the question whether there were sufficient articulable suspicions to warrant a protective frisk at that time, for no such frisk then was made. Rather, after Officer Jenkins made a note of appellant's identity, appellant was free to go, and did so.

The actual search was made later, and its constitutionality under the Fourth Amendment must be measured against different standards. Appellant was taken into custody solely on the assumption—significantly contributed to by appellant's production of a flawed identification card and his acknowledgement of a prior arrest in Arlington County—that an arrest warrant was outstanding against him. Unquestionably he then was arrested. *See generally* Campbell v. United States, D.C.App., 273 A.2d 252, 254 (1971).

■ In considering the merits of appellant's claim that the pistol and ammunition should have been suppressed, we examine principally three prior decisions. The Supreme Court's opinion in Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed. 2d 306 (1971), and this court's opinion in Gilchrist v. United States, D.C.App., 300 A.2d 453 (1973), arguably could support suppression of the evidence on the grounds that it was seized pursuant to an arrest based on a warrant which called for the arrest of another man.[2] Appellant places his primary reliance on such an approach. On the other hand, Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), decided one week subsequently to *Whiteley,* would appear to compel affirmance on the ground that appellant's arrest was made pursuant to a presumably valid warrant for the arrest of "Saunders", and, although the arrest was mistaken, it was carried out by police officers acting reasonably and in good faith. We are persuaded that the rationale of *Hill* controls.

In *Whiteley,* the sheriff of a sparsely populated Wyoming county swore out a complaint stating that Whiteley was believed to be guilty of burglarizing a local business establishment. The fact that the sheriff's sole basis for the charge was the uncorroborated tip of an unidentified informant was not revealed to the magistrate. An arrest warrant was issued, and the sheriff broadcast that fact. Whiteley was arrested in another locality by officers acting upon that radio notification.

---

2. No challenge has been made to the validity of the warrant for Saunders' arrest.

The Supreme Court found (1) that the warrant was patently deficient, and (2) that no independent probable cause existed for Whiteley's arrest. The Court concluded that the arrest thus was illegal, and that the evidence seized incident thereto was inadmissible. In response to the government's argument that the radio bulletin supplied the arresting officers with the requisite probable cause or, in the alternative, with reasonable grounds to believe that probable cause existed, the Court stated (401 U.S. at 568–69, 91 S.Ct. at 1037):

> We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.

> In sum, the complaint on which the warrant issued here clearly could not support a finding of probable cause by the issuing magistrate. The arresting officer was not himself possessed of any factual data tending to corroborate the informer's tip that Daley and Whiteley committed the crime. Therefore, petitioner's arrest violated his constitutional rights under the Fourth [Amendment]. . . . . [Footnote omitted.]

■ Thus, an arrest is illegal if it is made solely pursuant to a warrant which has not been validly issued, *i. e.,* a warrant which is based on a fundamental infirmity in the magistrate's determination of probable cause, or on an impropriety on the part of the swearing officer or the issuing magistrate. *See also* Darnall v. United States, D.C.Mun.App., 33 A.2d 734 (1943). Put somewhat differently, if an agent of the state makes an arrest pursuant to a warrant (assuming no independent probable cause), and the warrant fails, the arrest also must fail, for the agent's authority to make a proper arrest dies with the warrant. Good faith or reasonableness on the part of the arresting officer cannot remedy such an infirmity. *See* Hill v. California, *supra,* 401 U.S. at 804, 91 S.Ct. 1106; United States v. Holmes, 452 F.2d 249, 261 (7th Cir. 1971), cert. denied, 407 U.S. 909, 92 S.Ct. 2433, 32 L.Ed.2d 683 (1972).

In Gilchrist v. United States, *supra,* an officer stopped the defendant, who was personally known to him, on the basis of the officer's recollection that he had heard someone say (about two weeks earlier) that Irvin Gilchrist was wanted on a charge of unauthorized use of a motor vehicle. There was, however, no warrant. After some questioning concerning the ownership of a rented car which Gilchrist had been driving, the officers, at Gilchrist's suggestion, agreed to drive him to the car so that he could show them the rental contract. As Gilchrist started to enter the police car, the officers routinely frisked him and found a gun. Gilchrist asserted on appeal that the evidence was inadmissible since there was neither a warrant for his arrest nor independent grounds giving rise to probable cause (or to a reasonable belief that he was armed and dangerous).

■ We agreed with Gilchrist's contentions. Relying on *Whiteley,* we found "no constitutionally significant difference between an invalidly issued warrant and one which in fact does not exist." 300 A.2d at 455. The principle of *Whiteley* thus was extended: Where the sole basis for an arrest is an erroneous belief that a man is wanted, and no warrant for his arrest exists, that arrest is illegal. A good faith belief of the arresting officer cannot remedy such a basic—and fatal—inadequacy.

Hill v. California, *supra,* involved a set of facts more akin to those now before us.

Two men who were arrested for the possession of narcotics were found also to have the fruits of a robbery. They implicated Hill as a fellow participant in the robbery, and said that the guns used in the robbery and additional stolen property could be found at Hill's apartment. The officers verified the information supplied by the two admitted offenders, and concluded that probable cause existed to arrest Hill without a warrant.

The police proceeded to Hill's apartment to make a warrantless arrest. Upon arrival, they were met by a man named Miller, who fit Hill's description. They arrested Miller—presuming him to be Hill, despite Miller's disclaimers—and searched the apartment. Weapons and proceeds of crime were found. Miller was not implicated in the robbery, and was freed within two days of his arrest.

Hill contended that the search was based on an invalid arrest of Miller, and that the evidence thus seized should be inadmissible. The Supreme Court disagreed, finding

. . . no reason to disturb either the findings of the California courts that the police had probable cause to arrest Hill and that the arresting officers had a reasonable, good-faith belief that the arrestee Miller was in fact Hill, or the conclusion that "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." [401 U.S. at 802, 91 S.Ct. at 1110 (citation omitted).]

The Court's holding was limited to the effect of the arrest on Hill, the intended arrestee, for it was the search of Hill's apartment—based upon the mistaken arrest of Miller—which produced the incriminating evidence. The police, in those circumstances, were permitted "to do what the law would have allowed them to do if Miller had in fact been Hill . . . ." 401 U.S. at 804, 91 S.Ct. at 1111. The question at issue in *Hill* was "not what evidence would have been admissible . . . against Miller . . . ." *Ibid.*[3] That, however, is essentially the question now presented to us.

Thus we are left to decide which line of precedent should control here. Extending *Whiteley* and *Gilchrist,* appellant's arrest would be illegal because it was made pursuant to a nonexistent warrant for his (as opposed to Saunders') arrest. Following *Hill,* appellant's arrest and search would be justified because the police had a duty to arrest Saunders, and reasonably believed appellant to be Saunders.[4]

3. The findings and legal conclusion of the California courts which the Supreme Court found "no reason to disturb" are reported in People v. Hill, 69 Cal.2d 550, 446 P.2d 521, 72 Cal.Rptr. 641, (1968). The California Supreme Court focused its consideration on "whether the police had probable cause to arrest *Hill* . . . ." 72 Cal.Rptr. at 643, 446 P.2d at 523. In resolving that issue, the court placed primary reliance on three cases. *See* 401 U.S. at 802–03 n. 5, 91 S.Ct. 1106. An examination of the three cases reveals little to aid our deliberation here. In two of them, [People v. Miller, 193 Cal.App.2d 838, 14 Cal.Rptr. 704 (1961), and People v. Campos, 184 Cal. App.2d 489, 7 Cal.Rptr. 513 (1960)], the defendants' arrests followed grounds for probable cause which arose independently of the warrants and after the connections between the suspects and the outstanding warrants were shown to be erroneous. In the third [People v. Kitchens, 46 Cal.2d 260, 294 P.2d 17 (1956)], the statement supporting the validity of the arrest of one mistakenly believed to be the subject of an arrest warrant was dictum and supported by reliance on a provision of the California penal code, rather than on principles of constitutional law.

4. While Officer Jenkins gave somewhat conflicting testimony as to the factors which formed the basis for his belief that appellant was the wanted man, and as to which data on appellant coincided with data available on Saunders, at least three factors predominated: (1) the names were identical (albeit appellant's was misspelled on his own identification card) ; (2) the descriptions were similar ; and (3) appellant acknowledged that he previously had been incarcerated in the jurisdiction issuing the warrant.

We believe a common denominator exists between the two Supreme Court cases. The *Whiteley* requirement of a constitutionally valid warrant is a prerequisite to an arrest pursuant to a warrant. If there is an infirmity inherent in the foundation of the warrant (*e. g.,* an insufficient affidavit, *see* Whiteley v. Warden, *supra,* or an improper motive or purposeless arrest, *see* United States v. Holmes, *supra*), any arrest premised on the warrant is per se invalid. This is so regardless of the arresting officer's reasonable belief or good faith. However, where the warrant is constitutionally valid, *i. e.,* once the *Whiteley* prerequisite has been satisfied, the seizure of an individual other than the one against whom the warrant is outstanding is valid if the arresting officer (1) acts in good faith, and (2) has reasonable, articulable grounds to believe that the suspect is the intended arrestee. Should doubt as to the correct identity of the subject of warrant arise, the arresting officer obviously should make immediate reasonable efforts to confirm or deny the applicability of the warrant to the detained invidual. If, after such reasonable efforts, the officer reasonably and in good faith believes that the suspect is the one against whom the warrant is outstanding, a protective frisk pursuant to the arrest of that person is not in contravention of the Fourth Amendment.[5] *Cf.* Patterson v. United States, D.C.App. 301 A.2d 67 (1973); United States v. McCray, 468 F.2d 446 (10th Cir. 1972).

Applying this reasoning to appellant's circumstances, we find the arrest to have been valid. There is no allegation that the motivating warrant was defective. We conclude, as did the Supreme Court in *Hill,* that "on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." 401 U.S. at 804, 91 S.Ct. at 1111. The evidence seized incident to the arrest properly was admitted into evidence. Accordingly, the judgment appealed from is

Affirmed.

KERN, Associate Judge (dissenting):

Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968), teaches us that when a police officer "accosts an individual and restrains his freedom to walk away" the Fourth Amendment comes into play and, accordingly, the reason for such intrusion by the officer must be sufficiently articulated on the record to enable a reviewing court to conclude that action was reasonable under the circumstances. *See* Stephenson v. United States, D.C.App., 296 A.2d 606 (1972). In the instant case there were three separate and distinct "intrusions" by the officer:

First, Officer Jenkins by a show of authority, viz., his uniform, stopped appellant walking down the street in mid-afternoon and asked him a series of questions, the answers to which the officer recorded on a so-called "contact card" he carried;

Second, although the officer thereafter allowed appellant to proceed on his way he promptly radioed into headquarters some of the information elicited from appellant during the stop and questioning, which (a) triggered the advise, wholly mistaken as it later turned out, that appellant was wanted in Virginia on a warrant and (b) caused the officer to arrest him; and,

Third, the officer searched appellant simultaneously with the arrest and discov-

---

5. We do not focus here on the conduct of anyone other than the arresting officer. However, the principles enunciated would seem to apply to other stages of the inquiry and arrest process, so that irrational, unjustified, or bad faith conduct by others involved in the procedure also could vitiate an arrest. As noted, for example, the "good faith of the officers on the scene cannot remedy the improper instruction to make a purposeless, warrantless arrest." United States v. Holmes, 452 F.2d at 261. *See also* Hill v. California, *supra,* 401 U.S. at 804, 91 S.Ct. 1106.

ered a pistol which constitutes the basis of the conviction he now appeals.

The majority focuses on and ultimately approves the second and third acts of this sidewalk drama, viz., the arrest and the search incident thereto. My difficulty, however, is with the lawfulness of the *initial* stop, which the majority (Opinion at 4) disarmingly characterizes as "an approach [by the officer to appellant] to request identification." The record reflects appellant in response to the officer's show of authority left the sidewalk where he had been walking and proceeded to where the officer was parking his scooter in the street, and thereafter underwent questioning by the officer. In my view this is a *Terry* stop requiring on the record "specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, *supra,* 392 U.S. at 21, 88 S. Ct. at 1880.

Turning to the record we can glean only that the uniformed officer stopped appellant for questioning because of a belief that the latter was *possibly* "breaking into a car", after observing appellant about 2:30 p. m. a block from the Hilton Hotel (1) in "sort of a slow walk" and (2) "just going by looking in the direction of the automobiles parked along" the street. Parenthetically, I note that the trial court in its order denying the motion for suppression *incorrectly* describes the police officer as

having "noticed defendant walking along the sidewalk and *looking into* parked cars".[1] (Emphasis added.) The officer unequivocally testified both on direct and cross-examination, that appellant had been "looking in the direction of" cars parked on the street along which he was walking on the sidewalk. The difference between (a) appellant "looking into" and (b) appellant "looking in the direction of" parked cars is significant when determining the reasonableness of the officer's response here. Jenkins v. United States, D.C.App., 284 A.2d 460 (1971); Smith v. United States, D.C.App., 295 A.2d 64 (1972).

It may well be that the officer could have articulated under proper questioning by the prosecutor why, as an experienced law enforcement official, he concluded criminal activity was afoot on the basis of his observing appellant in a "sort of a slow walk" and "looking in the direction of parked autos"; but the record by which we are governed in our consideration of this appeal is devoid of any such articulation by the officer.[2] Upon what this court has before it, I am unable to agree the officer's stop and questioning was reasonable and in accordance with the Fourth Amendment. Hence, I think the subsequent arrest several minutes later based in critical part upon information elicted from appellant during the unlawful stop and questioning is invalid and the seizure of the gun must also be disapproved. United States v. Luckett, 484 F.2d 89 (10th Cir. 1973); *see*

---

1. The majority seeks to justify (Opinion at 375) the trial court's erroneous characterization in its order of the officer's testimony, *viz.,* "A police officer noticed defendant walking along the sidewalk and looking into parked cars . . . " by suggesting this was an "inference . . . drawn from the totality of the testimony." However, the officer's testimony in pertinent part on direct examination was: "I observed him . . . walking along some parked cars, and looking in the direction of the parked cars". On cross, the officer was asked, "How was he looking at cars?" and answered, "Just going by looking in the direction of the automobiles park-

ed along 19th Street." Assuming arguendo the court's descriptive comment in its order was indeed an "inference," it was plainly wrong and without evidence to support it.

2. I note the officer's testimony that *in the past* petit larcenies from parked autos had occurred in the area. What the officer failed to explain was how appellant's conduct, *viz.,* a sort of slow walk and looking in the direction of the autos parked along the sidewalk, signalled a theft was about to occur in the heart of downtown on 19th Street at two-thirty in the afternoon.

Commonwealth v. Whitaker, 336 A.2d 603 (Pa.1975). In my view of the case it is not necessary to reach, and I do not reach, the *Whiteley-Gilchrist-Hill* issue discussed in the majority opinion.