[No. F016628. Fifth Dist. May 3, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
GLENN RAY ALCORN, Defendant and Appellant.

## COUNSEL

Todd D. Riebe, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Roger E. Venturi and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THAXTER, J.**—After his motion to suppress evidence was denied, appellant Glenn Ray Alcorn pleaded nolo contendere to one count of possession

of methamphetamine in violation of Health and Safety Code section 11378. Pursuant to the terms of a plea bargain, other counts were dismissed, and Alcorn was sentenced to 16 months in state prison.

On appeal Alcorn challenges the denial of the suppression motion.

## FACTS

On March 19, 1991, sheriff's deputies from Los Angeles and Kern Counties arrived at the Rosamond Cafe in order to arrest appellant on an outstanding felony warrant issued on March 6, 1991, in Los Angeles County. Appellant was not at the cafe, but the officers contacted Cheryl Klein, appellant's girlfriend. Klein, who lived with appellant, told the deputies appellant was either at their apartment or in Lancaster, a nearby city. Klein accompanied the officers back to the apartment. At some point she was told she would be aiding and abetting if she did not cooperate with the officers.

Upon entering the apartment, the officers found appellant sleeping in the bedroom. Appellant was arrested pursuant to the authority of the Los Angeles warrant. After making the arrest, the officers observed narcotics in the apartment. Thereafter, the Kern County deputies obtained a telephonic search warrant based on their observations and searched the apartment. Narcotics, paraphernalia and a loaded handgun were found. Both Klein and appellant were arrested as a result. Klein and appellant were jointly charged with various offenses.

At the motion to suppress, Klein argued she had been unlawfully detained at the cafe, that the officers entered the apartment without a warrant and that the arrest warrant did not justify the entry because it was not produced at the hearing. Appellant joined in the motion. Appellant argued he was entitled to see the actual warrant and made numerous demands that it be produced.

At the hearing, the arresting officer testified he had been shown a copy of an abstract of the Los Angeles arrest warrant and that sheriff's deputies commonly make arrests on the basis of abstracts. A copy of the computer printout of the abstract was admitted into evidence.[1] The trial court denied the motion as to appellant stating:

"The probable cause for the arrest *in this case* is the discovery of the narcotics in the apartment, not the arrest warrant. In this case, the arrest was warrantless, but amply supported by the items found." (Italics in original.)

---

[1] The abstract was offered in evidence by appellant. Thus, no issue is raised regarding its admissibility.

## DISCUSSION

Appellant contends his suppression motion should have been granted because the prosecution failed to produce the arrest warrant and therefore could not justify the entry into his apartment. The trial court rejected appellant's argument on the grounds that the seizure of the narcotics and related evidence was based on the search warrant, not the arrest warrant. The court's analysis, however, overlooks the fact that probable cause for the search warrant rested on the officers' observations *after* they entered the apartment. The officers did not enter the residence pursuant to a search warrant. Respondent concedes that the evidence sought to be suppressed by appellant was "fruit" of the officers' entry to execute the arrest warrant.

█ A warrantless entry into a residence is presumptively unreasonable under the Fourth Amendment. (*People* v. *Cain* (1989) 216 Cal.App.3d 366, 370 [264 Cal.Rptr. 339], citing *Mincey* v. *Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408].) The entry here was not consensual. Thus the prosecution must show the officers were lawfully "at the looking place" when they made their observations.

An officer may enter a residence in order to execute a valid arrest warrant if the officer reasonably believes the suspect is inside. (*People* v. *Jacobs* (1987) 43 Cal.3d 472, 478-479 [233 Cal.Rptr. 323, 729 P.2d 757].) There is no question the officer here reasonably believed appellant was inside. Klein told the officers appellant was either at the apartment or in Lancaster. Thus the only question is whether the officers had a valid arrest warrant when they entered the apartment. If so, the officers were lawfully in the apartment when they observed the narcotics which led to the search warrant, the discovery of the additional evidence, and appellant's arrest in this case.

A. *An officer may rely on information received through official channels.*

█ It is well settled that an officer may reasonably rely on information received through official channels to support an arrest. An officer may rely on information from other officers within his or her own department and from other departments and jurisdictions. (See *United States* v. *Hensley* (1985) 469 U.S. 221, 229-230 [83 L.Ed.2d 604, 612-613, 105 S.Ct. 675]; *People* v. *Conway* (1990) 222 Cal.App.3d 806, 811 [271 Cal.Rptr. 832]; *Hewitt* v. *Superior Court* (1970) 5 Cal.App.3d 923, 929 [85 Cal.Rptr. 493]; *People* v. *Wohlleben* (1968) 261 Cal.App.2d 461, 465 [67 Cal.Rptr. 826].) The general rule is that an officer may rely on the "collective knowledge" of law enforcement to establish probable cause to arrest. (*Remers* v. *Superior*

*Court* (1970) 2 Cal.3d 659, 666-667 [87 Cal.Rptr. 202, 470 P.2d 11].) However, when the arresting officer relies upon information gathered by other officers, the court looks to the "total police activity" to test the constitutional reasonableness of the conduct in question. The prosecution must still prove that the arrest (or detention) was constitutionally valid. (*Ibid.*; see also *People* v. *Ramirez* (1983) 34 Cal.3d 541, 551 [194 Cal.Rptr. 454, 668 P.2d 761]; *Whiteley* v. *Warden* (1971) 401 U.S. 560 [28 L.Ed.2d 306, 91 S.Ct. 1031].)

### B.   *The prosecution must prove the arrest was lawful.*

Appellant argues the prosecution failed to meet its burden because it did not produce the actual arrest warrant, choosing instead to rely on the abstract. Appellant relies on *People* v. *Romanoski* (1984) 157 Cal.App.3d 353 [204 Cal.Rptr. 33], which held the prosecution must produce the actual warrant or a certified copy when the validity of an arrest pursuant to warrant is challenged.

In *Romanoski*, the arresting officer was told by another officer that Romanoski was wanted on an outstanding arrest warrant. When making the arrest, the arresting officer saw items in Romanoski's car linking Romanoski to a recent burglary. Romanoski moved to suppress the evidence. The prosecution presented testimony by the officer who informed the arresting officer of the warrant. He gave conflicting testimony on whether he had ever actually seen the warrant. Neither the original warrant nor a copy or abstract thereof was offered in evidence. The conviction was reversed on the grounds that a defendant has a right to ascertain whether a warrant was valid at the time of arrest and therefore the prosecution was required to produce the warrant upon request by the defendant.

The same court which decided *Romanoski* reexamined it in *People* v. *Armstrong* (1991) 232 Cal.App.3d 228 [283 Cal.Rptr. 429]. The *Armstrong* court first considered the continued validity of *Remers* v. *Superior Court*, *supra*, 2 Cal.3d 659 and its predecessors in light of the United States Supreme Court decision in *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], which adopted a good faith standard in search and seizure cases. *Armstrong* presents a careful analysis of the relationship between *Leon* and *Remers* and concluded *Remers* remains valid law in California. ". . . [W]here an arrest is made on communicated police information of an outstanding arrest warrant, the prosecution if challenged must prove the transmitted arrest warrant information, acted on in good faith by the arresting officer, was in fact received by the transmitting officer." (*People* v. *Armstrong*, *supra*, 232 Cal.App.3d at p. 241.)

In evaluating the effect of *Leon* on *Remers,* the *Armstrong* court notes that *Leon* constitutes recognition by the nation's Supreme Court that the exclusionary rule extracts a significant cost from society and that whenever the rule is applied, it is important to ask whether the cost to society is justified. (*Armstrong, supra,* 232 Cal.App.3d at pp. 238-239.) This is correct. Recent cases have concluded the exclusionary rule is too costly when an officer has acted in good faith, albeit without probable cause. (See *People v. Camarella* (1991) 54 Cal.3d 592, 606-607 [286 Cal.Rptr. 780, 818 P.2d 63]; *People v. Palmer* (1989) 207 Cal.App.3d 663, 666 [255 Cal.Rptr. 55].) *Armstrong* further notes that "*Leon* clearly does *not* validate the fruits of a search in *all* instances where the arresting officer acted in good faith in the execution of a search warrant. *Leon* reserved the application of the exclusionary rule in several instances and, thus, did not equate a finding that the searching officer acted in good faith reliance on the existence of a search warrant to a predicate finding of probable cause in all such instances." (*Armstrong, supra,* 232 Cal.App.3d at p. 240, italics original, fn. omitted.)

*Leon* holds there are four circumstances in which reliance on a warrant would not be objectively reasonable and thus not saved by the good faith rule. Suppression remains appropriate when the issuing magistrate was misled by knowingly or recklessly given false information appearing in the affidavit, when the magistrate wholly abandons the role of an independent judicial officer, when the warrant is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant's constitutional validity, and finally when the warrant is so deficient in its particularity that it would be unreasonable to presume the warrant valid. (*United States* v. *Leon, supra,* 468 U.S. at p. 923 [82 L.Ed.2d at pp. 698-699].)

Although *Armstrong* concedes *Leon* identifies circumstances where good faith belief that a warrant exists is insufficient to justify admission of illegally seized evidence, the analysis in *Armstrong* centers only on what it believes is the motivating concern in *Remers, Ramirez* and *Whiteley*—to protect against manufactured probable cause. (*Armstrong, supra,* 232 Cal.App.3d at pp. 236-237; see also *Whiteley* v. *Warden, supra,* 401 U.S. at p. 568 [28 L.Ed.2d at p. 313]; see also *People v. Ramirez, supra,* 34 Cal.3d at p. 547.) To protect against such misconduct, *Armstrong* concludes the prosecution retains the burden of proving the source of information was *something other than the imagination of another law enforcement officer.* (*Armstrong, supra,* at p. 237; see also *People v. Rice* (1967) 253 Cal.App.2d 789, 792-793 [61 Cal.Rptr. 394]; *People v. Orozco* (1981) 114 Cal.App.3d 435, 444-445 [170 Cal.Rptr. 604].)

C. *Production of the abstract is sufficient proof of the arrest's validity absent evidentiary challenge by the defendant.*

Having concluded that *Leon* does not relieve the prosecution from proving that warrant information transmitted to the arresting officer was not manufactured by the transmitting officer, the *Armstrong* court considered what type or quantum of proof is required to satisfy the prosecution's burden. The court reexamined its prior decision in *Romanoski*, concluding that the "rule" announced in *Romanoski* (requiring production of the actual warrant or a certified copy thereof) was "dictum and supported by inapposite authority." (232 Cal.App.3d at p. 242.) The court disavowed the *Romanoski* "rule," stating:

"The most direct way of proving police do not manufacture probable cause for an arrest, generated because one officer tells the arresting officer an arrest warrant exists, is production of that warrant or a certified copy. This is, however, 'not the *only* way' in which such proposition may be proven. [Citation omitted.]

". . . Proof that the warrant information precipitating the arrest was not manufactured may be made by circumstantial evidence other than the warrant or a certified copy. [Citations omitted.]

". . . . . . . . . . . . . . . . . . . . . . . .

"The *Remers-Harvey-Madden* rule only requires prosecution proof that information justifying the arrest was actually given to the police officer who furnished it to the arresting officer, i.e., proof that the source of the information on which the arrest was based was ' "something other than the imagination of an officer" ' who did not testify. (*Remers* v. *Superior Court, supra*, 2 Cal.3d at p. 666.) The prosecution must simply show that the officer furnishing the information generating the arrest had probable cause to believe the arrest was justified. [Citation omitted.]

". . . . . . . . . . . . . . . . . . . . . . . .

"We hold that denial of appellant's . . . motion was proper on the ground that in-house police manufacture of probable cause for appellant's arrest was circumstantially negated by record proof that the Richmond Police Department had received official information of an 'outside misdemeanor warrant' for appellant's arrest . . . ." (*People* v. *Armstrong, supra*, 232 Cal.App.3d at pp. 245-246.)

The last portion of the analysis in *Armstrong* is not wholly satisfying. Under *Leon* and *Ramirez* an officer acting in bad faith, i.e., manufacturing

the existence of a warrant *or* an officer acting in good faith but with knowledge that one of the four circumstances identified in *Leon* exists, may not circumvent a warrant's invalidity by asking colleagues ignorant of the constitutional infirmity to execute the warrant. In order to determine whether this occurred, the court must consider the circumstances surrounding the warrant's conception, or as the court in *Ramirez* has stated, trace the probable cause back to its original source. (*Leon, supra*, 468 U.S. at p. 923, fn. 24 [82 L.Ed.2d at p. 698], citing *Whiteley* v. *Warden, supra*, 401 U.S. at p. 568 [28 L.Ed.2d at p. 313]; *People* v. *Ramirez, supra*, 34 Cal.3d at p. 551.) The abstract alone does not enable the court to do so.

Although the abstract furnishes a basis for finding that the Kern County officers acted reasonably in relying on existence of a warrant for appellant's arrest, it does not foreclose the possibility that the information transmitted from Los Angeles was false. Further, without at least a copy of the warrant and its supporting affidavit, the court was unable to measure its sufficiency under the *Leon* standards.

Nonetheless, *Leon* calls for a balancing of the competing interests when deciding whether the exclusionary rule should be applied. Even though the abstract does not absolutely prove the warrant was valid, the abstract does provide sufficiently detailed information from which appellant could have easily obtained a copy of the warrant. The abstract shows the number and date of the warrant, the charges for which the warrant issued, and a judicial officer code. Appellant need only have contacted the Los Angeles County Clerk to obtain copies of the warrant and any supporting documents. From these documents, any constitutional infirmity sufficient to preclude application of the *Leon* good faith rule would have been evident.

We view this as essentially a discovery problem. The information sought is equally available to both parties. The only question is who has the responsibility of producing the warrant document and what is the remedy for the failure to produce it.[2]

Requiring the prosecution to produce the actual warrant, or a certified copy, on pain of having evidence suppressed extracts a high cost from society, with no corresponding benefit. The cost seems especially high when there has been *no* showing that even suggests the warrant is anything less than what the abstract purports. Failure to produce the warrant is not police

---

[2]If the prosecution has a copy of the warrant and its supporting documents but has simply failed to produce it, a defendant may invoke the general rules of criminal discovery to force production. (See 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, §§ 2493-2495, pp. 2995-2997.)

misconduct. Suppressing evidence simply because of the prosecution's failure to produce the warrant, which is equally available to the defendant, does not further the goals of the exclusionary rule.

In today's age of electronic communications and computerized record-keeping, the use and reliance on abstracts are a necessary part of the administration of justice.[3] The abstract is some proof that a warrant exists, although not absolute proof of its validity. An abstract provides sufficient information for a defendant who suspects foul play to trace the source of the probable cause and mount any challenge he or she deems appropriate.

We hold that when the prosecution, as here, produces an abstract showing the existence of a facially valid warrant, identifying the warrant with sufficient particularity to allow the defendant to obtain a copy of the warrant and its supporting documents, the prosecution has met its burden of producing evidence. (See Evid. Code, §§ 110, 550.) Because appellant offered no evidence attacking the warrant's validity, the preponderance of evidence showed that the officers entered appellant's apartment pursuant to a valid arrest warrant. Thus, the court did not err in denying the suppression motion.

DISPOSITION

Judgment affirmed.

Martin, Acting P. J., and Harris, J., concurred.

---

[3]The arresting officer, an eight-year veteran of the Kern County Sheriff's Office, testified that in the regular course and practice of his duties he typically works from information in computer-printed abstracts of arrest warrants.