[No. F025500. Fifth Dist. Dec. 5, 1997.]

THE PEOPLE , Plaintiff and Respondent, v.
SIDNEY COLLINS, Defendant and Appellant.

## Counsel

Valerie Hriciga, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger, Stan Cross and Carlos A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**VARTABEDIAN, J.**—In this case, we hold that the trial court erred in failing to suppress evidence where the prosecutor, after proper *Harvey-Madden*[1] objection, failed adequately to establish the existence of the warrants on which appellant Sidney Collins was arrested. As a result of this conclusion, appellant's other contention on appeal, concerning his restitution fine, is moot.

### Facts and Procedural History

On June 27, 1995, Bakersfield Police Officer Matthew Hilliard made contact with appellant as Hilliard was investigating an automobile theft. In a consensual encounter in the driveway of a home, Hilliard asked appellant his

---

[1] *People* v. *Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689] and *People* v. *Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971].

name and a few questions about a suspect in the auto theft. Appellant identified himself as Ronald Pierce.

Hilliard left appellant in the driveway while he went to the door of the home in search of the suspect. As he walked, Hilliard spoke by radio to his dispatcher, asking for a warrant check on Ronald Pierce. Unsuccessful in locating his original suspect, Hilliard returned to appellant. As he did so, the dispatcher told him there were two outstanding misdemeanor arrest warrants for Ronald Pierce.

Hilliard handcuffed appellant and searched him for identification. Finding none, he asked appellant his birth date. The date appellant gave did not agree with Pierce's birth date, according to the dispatcher. Hilliard asked the dispatcher for Pierce's description. The description generally matched appellant's. The dispatcher told Hilliard that Pierce had a tattoo of a plant or bird on his upper arm. Hilliard found such a tattoo on appellant's upper arm.

Having confirmed to his own satisfaction that appellant was the person described in the misdemeanor arrest warrants, Hilliard placed appellant in the patrol car. Appellant summoned Hilliard after a short time. He pointed out two baggies of white powder on the floor of the police car, which he said were not his, and he told Hilliard that his name was really Sidney Collins, not Ronald Pierce.

Hilliard conveyed appellant to the police station. When appellant was searched pursuant to booking procedures, officers found another bag of methamphetamine and $1,230 in cash on appellant's person.

Appellant was charged with one count of possession of methamphetamine for sale (Health & Saf. Code, § 11378) and one count of providing false identification to a police officer (Pen. Code, § 148.9, subd. (a)).

On October 12, 1995, the court heard appellant's suppression motion pursuant to Penal Code section 1538.5. Hilliard testified about his encounter with appellant essentially as summarized above. When Hilliard began to testify about the arrest warrant, defense counsel stated, "Objection, *Harvey Madden*." The court overruled the objection. Appellant did not testify, but presented testimony from another person who was present at the arrest. The trial court took the matter under submission and denied the suppression motion by minute order of October 13, 1995, finding, in essence, that the initial arrest was lawful and the methamphetamine and cash were legitimately seized after the arrest.

On October 23, 1995, appellant pled no contest to both counts of the information. Pursuant to an indicated sentence, on December 27, 1995, the

court sentenced appellant to 16 months in state prison for possession of methamphetamine for sale, plus a concurrent term of 6 months on the false identification count. On February 16, 1996, appellant filed a notice of appeal.

## DISCUSSION

■ In supplemental briefing invited by this court, respondent contends appellant failed to raise in the trial court the issue he now seeks to present on appeal. Although defense counsel's objection, as set forth above, was in the form of rather compressed jargon, the court ruled on the motion without requesting a more expanded version. We conclude the objection was sufficient to put the court and the prosecutor on notice of the need for the prosecution to prove the existence of the arrest warrants. It is the failure to prove the warrants that forms the basis for appellant's primary contention in this court.

### *Constitutional and Statutory Framework*

■ "Pursuant to article I, section 28, of the California Constitution, a trial court may exclude evidence under Penal Code section 1538.5 only if exclusion is mandated by the federal Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 896 . . . .) Thus, exclusion of the evidence . . . was proper only if that evidence was obtained in violation of the Fourth Amendment. [¶] That amendment provides, in pertinent part: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .' (U.S. Const., Amend. IV.) State and local law enforcement officials are subject to the requirements of the Fourth Amendment based upon the operation of the due process clause of the Fourteenth Amendment to the United States Constitution. (*Mapp* v. *Ohio* (1961) 367 U.S. 643 . . . ; *Wolf* v. *Colorado* (1949) 338 U.S. 25, 27-28 . . . ." (*People* v. *Banks* (1993) 6 Cal.4th 926, 934 [25 Cal.Rptr.2d 524, 863 P.2d 769].)

A person may be "seized"—i.e., arrested—for a misdemeanor "in obedience to a warrant" (Pen. Code, § 836, subd. (a)) or if the "officer has reasonable cause to believe that the person to be arrested has committed a public offense in the officer's presence" (Pen. Code, § 836, subd. (a)(1)). (An officer may also assist a civilian in making a citizen's arrest under various circumstances not relevant here. [See Pen. Code, § 836, subds. (b), (c).]) ■ In the present case, respondent did not contend appellant committed an offense in Hilliard's presence; rather, respondent contended Hilliard arrested appellant pursuant to outstanding arrest warrants for misdemeanors.

Hilliard did not have the warrants in his possession, but was informed of their existence by his dispatcher. When an officer makes an arrest based on information conveyed through official channels, the constitutional validity of the arrest ultimately depends on the quality of the information received. Thus, in *Whiteley* v. *Warden* (1971) 401 U.S. 560, 568-569 [91 S.Ct. 1031, 1037-1038, 28 L.Ed.2d 306], an officer made an arrest based on his dispatcher's representation that a warrant existed for arrest of the suspect. It turned out that the complaint upon which the arrest warrant was issued did not state probable cause for arrest and the arresting officer had no other facts that would have constituted probable cause. As a result, the Supreme Court held that the arrest was unlawful and evidence seized pursuant to the arrest had to be suppressed. (*Id.* at p. 569 [91 S.Ct. at pp. 1037-1038]; see also *United States* v. *Hensley* (1985) 469 U.S. 221, 232 [105 S.Ct. 675, 682, 83 L.Ed.2d 604]; *People* v. *Ramirez* (1983) 34 Cal.3d 541, 552 [194 Cal.Rptr. 454, 668 P.2d 761].)[2]

### The *"Harvey-Madden"* Rule

In California, certain evidentiary rules have been established to govern the manner in which the prosecution may prove the underlying grounds for arrest when the authority to arrest has been transmitted to the arresting officer through police channels. (*People* v. *Rogers* (1978) 21 Cal.3d 542, 547 [146 Cal.Rptr. 732, 579 P.2d 1048].) These evidentiary rules are often referred to as the *"Harvey-Madden* rule," after *People* v. *Harvey, supra,* 156 Cal.App.2d 516 and *People* v. *Madden, supra,* 2 Cal.3d 1017. The rationale and general scope of the rule was summarized in *Madden:* "[A]lthough an officer may make an arrest based on information received through 'official channels,' the prosecution is required to show that the officer who originally furnished the information had probable cause to believe that the suspect committed a felony. We reaffirmed this principle in the recent case of *Remers* v. *Superior Court* [(1970) 2 Cal.3d] 659, 666-667 . . . , where we pointed out: 'It is well settled that while it may be perfectly reasonable for officers in the field to make arrests on the basis of information furnished to them by other officers, "when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness." . . . To hold otherwise would permit the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not

[2]*United States* v. *Leon* (1984) 468 U.S. 897 [104 S.Ct. 3405, 82 L.Ed.2d 677] had not been decided at time of *Whiteley,* of course. And although *Whiteley* was cited with approval in *Hensley,* the *Hensley* detention did not involve a warrant, so there was no consideration of the effect, if any, of *Leon* on *Whiteley.* We address *Leon* later in this opinion.

know such information, without establishing under oath how the information had in fact been obtained by the former officer. . . . "If this were so, every utterance of a police officer would instantly and automatically acquire the dignity of official information; 'reasonable cause' or 'reasonable grounds,' . . . could be conveniently fashioned out of a two-step communication; and all Fourth Amendment safeguards would dissolve as a consequence." ' " (2 Cal.3d at p. 1021, citations omitted.)

In *People* v. *Alcorn* (1993) 15 Cal.App.4th 652 [19 Cal.Rptr.2d 47], this court had occasion to apply the *Harvey-Madden* rule in the context of an arrest pursuant to a warrant.[3] The court held that the prosecution adequately proved the existence of a facially valid warrant for defendant's arrest by virtue of testimony that the arresting officer had seen a teletype abstract of the warrant and by introduction into evidence of the teletype itself. (*Id.* at pp. 654, 659-660.) The court held that introduction into evidence of the warrant itself and documentation supporting its issuance was not necessary to prove the legality of the arrest for *Harvey-Madden* purposes, where the teletype "identif[ied] the warrant with sufficient particularity to allow the defendant to obtain a copy of the warrant . . . ." (*Id.* at p. 660.) The warrant was equally available to the defendant if he wanted to show it was issued without probable cause or otherwise was so defective the arresting officer's reliance on it would not be validated by *United States* v. *Leon, supra*, 468 U.S. 897. (15 Cal.App.4th at pp. 659-660.) Thus, where the prosecution has introduced some credible, independent evidence of the existence of a facially valid warrant supporting the arrest, "the prosecution has met its burden of producing evidence. (See Evid. Code, §§ 110, 550.)" (*Id.* at p. 660.)

### Application of the Law to the Present Facts

■ In the present case, the prosecution introduced no independent evidence whatsoever concerning the existence of the warrant. Respondent nevertheless contends there are two reasons why *Alcorn* does not require reversal. Both reasons are based on the fact that appellant falsely identified

---

[3]The *Harvey-Madden* rule developed in the context of proof of probable cause to make a warrantless felony arrest when the probable cause was purportedly possessed by another member of the police department. It subsequently has been applied in various contexts where the "probable cause" for arrest is not based on the underlying facts generated by police investigation but, rather is based on, a warrant resulting from a magistrate's review of those facts as reported in documents supporting the arrest warrant. (See *People* v. *Alcorn, supra*, 15 Cal.App.4th at pp. 656-658, discussing cases.) Cases involving probable cause to arrest generated directly from facts known to another officer have very little applicability in the misdemeanor context since, generally, arrests for misdemeanors not committed in the arresting officer's presence can only occur pursuant to a warrant. (Pen. Code, § 836, subd. (a).)

himself to Hilliard.[4] First, respondent contends the existence and facial validity of the arrest warrants is "irrelevant since appellant was not the person being sought by those warrants. . . . Through his own dishonesty, appellant caused himself to be initially arrested until his true identity was shortly discovered." Accordingly, there was no requirement that the prosecution prove the existence of the warrant as is traditionally required. Second, respondent contends application of the exclusionary rule in the present circumstances entails too high a social cost, because "suppression of the evidence would have no effect whatsoever on the transmitting officer's behavior." We address each point in turn.

Respondent cites no authority for its argument that a person misidentified as the subject of a warrant cannot challenge his arrest pursuant to the warrant. The law, although often stated as dicta or appearing as the unstated premise of a related discussion, clearly is contrary to respondent's position.

Thus, as stated in *Noia* v. *Cozens* (1973) 34 Cal.App.3d 691, 694 [110 Cal.Rptr. 231], "An arrest is valid *even when* the officer arrests the wrong person *if* the officer has reasonable cause to arrest another person and reasonably mistakes the wrong person for the other person. (*People* v. *Hill* [(1968)] 69 Cal.2d 550, 553 . . . .)" (Italics added.)

In *People* v. *Hill* itself, the Supreme Court stated: "Mistake of identity does not negate probable cause to arrest, and a search *based on a valid but mistaken arrest* is not unreasonable . . . ." (*People* v. *Hill* (1968) 69 Cal.2d 550, 555 [72 Cal.Rptr. 641, 446 P.2d 521], italics added; see *People* v. *Dyke* (1990) 224 Cal.App.3d 648, 658 [274 Cal.Rptr. 66].)[5] "The United States Supreme Court granted certiorari [in *Hill*]. In affirming, the court stated: '[T]he officers in good faith believed Miller was Hill and arrested him. They were quite wrong as it turned out, and *subjective good-faith belief would not in itself justify either the arrest or the subsequent search*. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing

---

[4]Our record contains no evidence whether appellant was in fact the subject of the Pierce arrest warrants—i.e., whether he had used Pierce as an alias in the past, or whether he had the misfortune of choosing the name of a person who happened to have a tattoo like his own. These alternatives do not alter our analysis.

[5]In *Hill*, police had probable cause to arrest Hill. They went to his apartment, where a man named Miller answered the door. Reasonably mistaking Miller for Hill, they arrested him and searched the premises, finding materials incriminatory of Hill. (69 Cal.2d at p. 552.) Hill sought suppression of the evidence seized pursuant to the search incident to Miller's arrest. (*Id.* at pp. 552-553.) The court affirmed denial of the suppression motion, since there was probable cause to arrest and the mistake of identity was reasonable under the circumstances. (*Id.* at p. 555.)

them at the time.' (*Hill* v. *California* (1971) 401 U.S. 797, 803-804. . . .)" (*People* v. *Dyke, supra,* 224 Cal.App.3d at pp. 658-659, italics added.)

In the case of *Baker* v. *McCollan* (1979) 443 U.S. 137 [99 S.Ct. 2689, 61 L.Ed.2d 433], an innocent person sued for violation of his civil rights, pursuant to 42 United States Code section 1983, after he was mistakenly arrested on a warrant. The warrant named the innocent man as the subject to be arrested, but the warrant actually was directed at his brother, who had obtained a duplicate driver's license in the name of his brother, the innocent arrestee, and had used that license for identification when initially arrested. (443 U.S. at pp. 140-141 [99 S.Ct. at pp. 2692-2693].) The court held there was no Fourth Amendment violation under these circumstances *because the underlying warrant was valid.* "For purposes of analysis, then, this case can be parsed with relative ease. *Absent an attack on the validity of the warrant* under which he was arrested, respondent's [Fourth Amendment] complaint is simply that despite his protests of mistaken identity, he was detained in the Potter County jail . . . ." (*Id.* at pp. 143-144 [99 S.Ct. at p. 2694], italics added.)

In *Powe* v. *City of Chicago* (7th Cir. 1981) 664 F.2d 639, 644-646, the court dealt with a civil rights action brought by a man (Powe) arrested pursuant to a warrant issued for another man. The true subject of the warrant had stolen Powe's wallet, had been arrested and convicted under Powe's name, had been placed on probation, and then was the subject of an arrest warrant after he violated probation. (*Id.* at pp. 642-643.) Powe was arrested several times on the outstanding warrant after he was stopped for traffic offenses. The federal appellate court determined the underlying warrant was constitutionally defective. Accordingly, the court held, Powe's arrest pursuant to the defective warrant was a violation of *his* Fourth Amendment and due process liberty rights. (*Id.* at pp. 644-645.)

In the present case, it was appellant who was arrested, regardless of whom Hilliard thought he was arresting or how reasonable Hilliard's conclusion that he was arresting "Pierce." It was appellant who had a Fourth Amendment right to be free of "unreasonable seizures." Accordingly, it was incumbent upon the prosecution to prove the arrest was constitutionally reasonable. In this case, that constitutional reasonableness could only arise from execution of a facially valid arrest warrant in a reasonable manner. While Hilliard's testimony was sufficient to establish the reasonableness of the mistake of identity, it was insufficient to establish the existence of the facially valid warrant pursuant to the *Harvey-Madden* rule. (*People* v. *Alcorn, supra,* 15 Cal.App.4th at pp. 656-657.)

Respondent's second contention is that the exclusionary rule should not apply because "suppression of the evidence would have no effect whatsoever

on the transmitting officer's behavior. As already discussed, the validity of those misdemeanor warrants is not relevant to the facts of this case."[6] In some sense, as suggested in *People* v. *Alcorn, supra,* 15 Cal.App.4th at page 657, it is true that the underlying validity of the arrest warrant is not the ultimate issue in any case involving arrest pursuant to a warrant: *United States* v. *Leon, supra,* 468 U.S. 897, suggests that facially valid but defective arrest warrants might support a constitutionally reasonable arrest where the "transmitting officer" is acting in good faith. Nevertheless, there must *be* such a warrant for the warrant to be facially valid. It is the very existence of the warrant that the prosecution failed to prove in this case. (See *People* v. *Alcorn, supra,* 15 Cal.App.4th at p. 656.) In the absence of such proof, the arrest was constitutionally unreasonable, striking at the core of the Fourth Amendment and requiring suppression under the exclusionary rule.

DISPOSITION

The judgment is reversed.

Stone (W. A.), Acting P. J., and Harris, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 11, 1998.

---

[6]Respondent conceptualizes, or at least phrases, the issue in terms that are not applicable to the facts. Thus, respondent states that the focus is on the "transmitting officer." (It is not clear whether this means the officer who sought the warrants or simply means the police dispatcher, as suggested by the context in which respondent uses "transmitting officer" in its brief.) Respondent views appellant as challenging the probable cause to obtain the warrants in the first instance, and concludes this question is irrelevant because it does not deal with facts that are applicable to appellant, who was not the subject of the warrant in any case.

While such a challenge to the underlying validity of the warrants is legally permissible (albeit tempered in some way by *United States* v. *Leon, supra,* 468 U.S. 897 as noted in *People* v. *Alcorn, supra,* 15 Cal.App.4th at p. 657), it is a step beyond the actual challenge that appellant makes in this case. In this case, appellant actually argues the prosecution failed to prove, in accordance with the established evidentiary rules, that there was a facially valid arrest *at all*: Respondent failed to prove there were valid arrest warrants because it offered as evidence of the warrants only the testimony of the arresting officer concerning the existence of the warrants. Hilliard, as everyone acknowledges, had never seen the warrants and knew nothing more than that a dispatcher said they showed up on the computer. As noted above, *Alcorn* and the entire line of *Harvey-Madden* cases are in agreement that this is insufficient to prove the arrest was lawful and constitutionally reasonable.